### JONES et ux. v. INDEMNITY INS. CO. OF NORTH AMERICA et al.

### No. 5564.

Court of Appeal of Louisiana. Second Circuit.

Jan. 28, 1938.

Barksdale, Bullock, Warren, Clark & Van Hook, of Shreveport, for appellants.

Irion & Switzer, of Shreveport, for appellees.

DREW, Judge.

Plaintiffs are husband and wife, and the community of acquets and gains existed between them before and when this suit was filed. The wife sues to recover damages for personal injuries sustained by her on November 14, 1935, by reason of an automobile collision at the intersection of Pierre Mont road and Gilbert drive, just beyond the southern limits of the city of Shreveport. The husband sues for damage done to the automobile, which belonged to the community, and for expenses incurred because of the accident.

Pierre Mont road is located just south of the city of Shreveport, extends east and west, connects Harts Island road and Line avenue, and is one of the principal thoroughfares of Caddo parish for the use of motor vehicles. Gilbert drive extends north and south and intersects said road.

It is alleged that on or about November 14, 1935, in the early afternoon of that day, Mrs. Jones was driving a Hudson sedan in a westerly direction along Pierre Mont road; that when she reached Gilbert drive and was in the intersection of said road and drive, near the center thereof, defendant, Ed Jacobs, suddenly and unexpectedly drove his Ford V–8 sedan in a northerly direction along Gilbert drive into said intersection, and ran into and struck the Hudson sedan driven by plaintiff, near the left front wheel and fender thereof, with great force and violence, breaking or impairing the steering gear of said automobile to such extent that it could not be controlled and guided, causing it to veer to its left and run into and strike a tree south of the road.

Defendant Ed Jacobs is charged with negligence causing the accident in one or more or all of the following respects:

"1. That he drove his Ford V–8 sedan along Gilbert drive and into Pierre Mont road at a fast and reckless rate of speed;

"2. That he failed to stop, slow down, or bring his car under control as he entered said intersection;

"3. That he failed to sound his klaxon or otherwise give notice or warning of his approach to said road and intersection;

"4. That he failed to keep a lookout for other motor vehicles passing along and over said road and intersection."

It is further alleged that Mrs. Jones' body, muscles, ligaments, and tendons thereof were bruised, lacerated, and torn, the front part of her skull fractured, her nose broken and mashed, her face cut with a deep gash from the left side of her nose across to her forehead above her right eye, her lower limbs bruised and skinned, the nerves of her eyes injured so as to cause double vision, and her entire nervous system greatly shocked and shattered, all of which injuries are permanent; that it was necessary for her to have treatment at the Schumpert Sanitarium, X-ray examinations, nursing and medical and surgical attention.

Mrs. Jones demands $2,500 for personal injuries, $1,250 for physical pain, and $1,250 for mental anguish.

Edward R. Jones, representing the community, demands $270.35 for damage to the Hudson sedan, $10 for X-ray examinations, $100 for medical and surgical attention, $12 for nursing fees, and $34.50 for sanitarium expenses, a total of $426.85.

Indemnity Insurance Company of North America issued to defendant Ed Jacobs a public liability insurance policy covering his car, which policy was in force and effect at the time of the accident. Said insurer is a party to this suit.

Defendants admit the accident, Mrs. Jones' injuries, and her treatment at the Schumpert Sanitarium, but they deny the other material allegations of the petition, particularly those of negligence, alleging that Mrs. Jones was negligent in one or more or all of the following respects, causing the accident and her injuries, or, in the alternative, contributing thereto:

"1. That she drove her Hudson sedan along Pierre Mont road and into the intersection of Pierre Mont road and Gilbert drive at a fast and reckless rate of speed;

"2. That she failed to keep a look-out for other motor vehicles passing along and over said road and intersection, and particularly she utterly and entirely failed to glance to her left or in front of her car as she approached and traversed said intersection;

"3. That she failed to stop, slow down, or bring her car under control as she entered said intersection;

"4. That notwithstanding your respondent, Ed Jacobs, had preempted said intersection by entering it first, she failed to give any warning or other notice that she would attempt to cross said intersection;

"5. That she was driving on the wrong side of the road and that had she been on her proper (north) side of Pierre Mont Road instead of being negligently and recklessly in the center thereof, with a portion of her car south of the center line thereof, the collision would never have occurred."

Plaintiffs prosecute this appeal from a judgment rejecting their demands.

There were only two eyewitnesses to the accident. They were the sole occupants of the two cars which collided; Mrs. Jones, who was driving one, and Mr. Jacobs, who was driving the other.

Mrs. Jones was traveling west on Pierre Mont road. Mr. Jacobs had driven north on Gilbert drive and had entered the intersection of Gilbert drive with Pierre Mont road. Mrs. Jones was traveling approximately 35 miles per hour, and Mr. Jacobs 3 or 4 miles per hour. When Jacobs arrived at the intersection and entered it he turned left, intending to head west on Pierre Mont road. He lacked only about 15 or 20 per cent. of straightening his car out on the south side of said road when the collision occurred. Neither driver saw the other until the moment of the collision. Mr. Jacobs is very positive he never crossed to the north side of Pierre Mont road and explained why he did not. He traveled the same route daily, and always turned to the left when heading west on Pierre Mont and hugged the left curb as nearly as possible, until such time as he felt safe in pulling to the right side of the road. His explanation of his actions in this respect is that approximately 200 feet east of this intersection on Pierre Mont there is a sharp decline in the road, which hides from the view, when at the intersection, any car coming from the east; and that to cross to the north side of Pierre Mont when entering the intersection would place his car directly in the path of a speeding car coming from the east. The view to the west of the intersection is unobstructed for a long way, and, when any one can be seen coming from the west, there is no danger in traveling on the south side of Pierre Mont until such time as the distance from the decline to the east is gained, to safely cross to the north side.

He testified that 90 per cent. of the automobilists who use Gilbert in entering Pierre Mont do exactly as he does and did, on this occasion.

Mrs. Jones' proper side of the road was the north side, which was never entered by Mr. Jacobs. If she had remained on her proper right side of the road, there would not have been an accident. We are of the opinion the evidence substantiates the fact that the left wheels of her car were approximately 4 feet south of the center line of Pierre Mont road at the time of the collision.

The physical facts clearly show that her car struck Mr. Jacobs' car. The impact was light; the hub cap on the right front wheel of the Jacobs' car was slightly dented and the bumper bent slightly forward. There was no other damage done to it.

Mr. Jacobs, on arriving at the intersection, slowed his car down to a speed of about 3 miles per hour, looked in both directions, and continued at this speed into the left side of Pierre Mont road. He at all times left the path (north side) of Mrs. Jones' car clear for her use. The road is 30 feet wide and paved. The closest Jacobs' car got to the center of it was 4 feet, leaving 19 feet in which Mrs. Jones could pass.

■ It is argued that Jacobs was negligent, per se, by turning his car to the left and hugging the left curb instead of driving to the north side of the road and then turning to the left. Assuming that it was negligence per se in that it was a violation of the Highway Act, it was not a proximate cause of the accident. If he had observed the laws literally, he would have been struck broadside by the Jones car. His action did not cause Mrs. Jones to change her course, for she swears she never saw the Jacobs' car until the moment of the accident. She was not misled in any manner by his actions. Her north half of the road was clear for her to travel at all times, and she was negligent in not occupying it.

■ Plaintiffs seriously contend here that Jacobs had the last clear chance to avoid the accident. It is argued that Jacobs, by looking at the proper place to look, before entering the intersection, could have seen the Jones car for approximately 200 feet before it reached the intersection,

and should have stopped his car and waited for her to pass. If he had seen the Jones car entering 150 to 200 feet east of the intersection, he would have been justified in entering the intersection, and could have done so without creating any peril for Mrs. Jones, if she had been giving a proper lookout and had seen that which she could have seen.

There might be some excuse for Jacobs not seeing the Jones car after he started turning to the left when entering the intersection, for his car, at that time, was headed in a different direction from which Mrs. Jones was coming; but there is no excuse for Mrs. Jones not seeing the Jacobs car which was entering and in the intersection directly in front of her. The only reason she didn't see the Jacobs car was that she was not looking ahead of her car. A casual glance ahead would have been sufficient for her to have seen. In the eyes of the law, she did see, and a slight turn of her car to the right would have, up to almost the moment of the accident, been sufficient to have avoided the collision.

If the "last clear chance doctrine" is applicable to the case, clearly Mrs. Jones had that chance and failed to exercise it. However, if we should apply the doctrine as applied to actual discovered peril, it would have no application, as neither party actually saw the other.

We are convinced the judgment of the lower court is correct, and it is affirmed, with costs.